## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**DIRECTV, INC.,**

      Plaintiff,

v.                                      Civil No. **04-0350 MCA/RHS**

**ELIEZER GUZMAN**,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER comes before the Court pursuant to ***Plaintiff's Motion for Entry of Default and Default Judgment Against Eliezer Guzman*** [Doc. No. 4] filed on July 7, 2004. The Court held a hearing on Plaintiff's motion on August 18, 2004.  Having reviewed the relevant law, the pleadings and exhibits of record, the arguments and evidence presented at the hearing, and being fully advised in the premises, I find that Plaintiff is entitled to a default judgment granting injunctive relief and awarding damages in the amount of $2,384.00, with costs and disbursements in the amount of $150.00, and attorney fees in the amount of $310.86.   Plaintiff's motion is granted in part and denied in part for the reasons set forth below, and a default judgment closing this case shall be entered forthwith.

## I.    <u>FINDINGS OF FACT</u>

The well-pleaded factual allegations in Plaintiff DIRECTV's *Complaint* are accepted as true by virtue of Defendant Guzman's default.  In addition, the Court makes the following

findings of fact with respect to the issues of damages, injunctive relief, attorney fees, and costs:

1.      Defendant Guzman was properly served in this action on April 29, 2004, when Plaintiffs' process server posted the *Summons* and the *Complaint* on the most public part of Defendant Guzman's premises at 38 Airport Drive, Los Lunas, New Mexico, and mailed a copy of the *Summons* and *Complaint* to that address pursuant to Rule 1-004(F)(1) NMRA 2004 and Fed. R. Civ. P. 4(e)(1).  [Ex. A to Doc. No. 4.]

2.      Defendant Guzman has failed to answer the *Complaint* or appear in this action at any time, and this Defendant is in default.

3.      On or about December 3, 2002, Defendant Guzman purchased one "SAT-HU Sureshot" unlooper from "Easybuy2000.com."  [Ex. 6.]

4.      During the time period relevant to Plaintiff's *Complaint*, "Easybuy2000.com" was an Internet website offering pirate access devices, as well as related software and technical support, for sale to the general public.  [Ex. 4.]

5.      The unlooper purchased from "Easybuy2000.com" by Defendant Guzman is designed to be used in conjunction with software that can be downloaded from the Internet for the purpose of reprogramming DIRECTV access cards so that they can be used to intercept or receive Plaintiff DIRECTV's satellite transmissions without a subscription, payment, or other legal authorization.

6.      The unlooper purchased by Defendant Guzman is rendered operational by plugging it into a personal computer via a serial port, inserting a "Period 3" DIRECTV access

card into the unlooper, using certain software on the computer to reprogram the access card, and then inserting the reprogrammed "Period 3" access card into a DIRECTV receiver.

7.      Other than the tasks described above, no assembly or modification of any device or equipment is required to render the unlooper operational for the purpose of intercepting or receiving all of the television programming available through Plaintiff DIRECTV's satellite transmissions.

8.      During the time period relevant to Plaintiff's *Complaint*, Defendant Guzman was a DIRECTV subscriber who possessed the equipment necessary to lawfully receive and view some, but not all, of Plaintiff's satellite transmissions.  [Ex. 7.]

9.      Based on the billing records presented at the hearing on August 18, 2004, Defendant Guzman purchased an average of approximately $80.00 per month of DIRECTV programming during the period relevant to Plaintiff's *Complaint*.  [Ex. 7.]

10.     Because the unlooper and related software on the "Easybuy2000.com" website provided Defendant Guzman with a means of accessing all of the television programming available through Plaintiff DIRECTV's satellite transmissions, it is reasonable to infer that Defendant Guzman's viewing habits resembled those of the top ten percent (10%) of DIRECTV subscribers, *i.e.*, those who purchased or subscribed to significantly more pay-per-view and "premium" channels than the average DIRECTV subscriber.

11.     The average monthly cost of a subscription for the top ten percent (10%) of DIRECTV subscribers is $229.00.

12.     The unlooper purchased by Defendant Guzman was rendered useless when Plaintiff DIRECTV completed the switchover from "Period 3" access cards to "Period 4" access cards on April 4, 2004.

13.     Based on the above findings, it is reasonable to infer that, in addition to the average of approximately $80.00 per month of DIRECTV programming for which Defendant Guzman paid, this Defendant unlawfully obtained approximately $149.00 worth of programming per month for a period of sixteen months, for a total of approximately $2,384.00 in lost subscription and pay-per-view revenues to Plaintiff DIRECTV.

14.     Based on the above findings, it is reasonable to infer that Defendant Guzman was an end-user who obtained and operated the unlooper for personal use in viewing DIRECTV programming at a family residence.

15.     The fact that Defendant Guzman's billing records show more than one telephone number is not sufficient to support a reasonable inference that Defendant Guzman was using the unlooper to "clone" multiple DIRECTV access cards for use by others.

16.     Plaintiff DIRECTV has shown that the requirements for injunctive relief are satisfied with respect to Defendant Guzman in this case.

17.     In conjunction with the injunctive relief granted in this case, the award of statutory damages, attorney fees, and costs is sufficient to deter future violations by Defendant Guzman.

18.   At the hearing on August 18, 2004, Plaintiffs' counsel supplied additional information regarding the itemization of the costs and attorney fees requested in their motion, and the amounts requested are reasonable in light of this additional information.

## II.   **ANALYSIS**

### A.   **Jurisdiction**

The law in this circuit requires that "judgment by default should not be entered without a determination that the court has jurisdiction over the defendant." Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp., 115 F.3d 767,771 (10th Cir. 1997).  Thus, before entering a default judgment "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." Williams v. Life Sav. and Loan, 802 F.2d 1200, 1202-03 (10th Cir. 1994).

In this case, the Court has reviewed the record and is satisfied that it has jurisdiction over both the subject matter and the parties at issue in Plaintiff's motion. See Cablevision of S. Conn., Ltd. P'Ship v. Smith, 141 F. Supp. 2d 277, 282-83 (D. Conn. 2001).  In particular, the Court finds that Defendant Guzman was properly served with the *Summons* and *Complaint*, and that he is not an infant, an incompetent person, or a soldier or sailor who is shielded from entry of a default judgment under these circumstances.

### B.   **Damages**

The Tenth Circuit has held that "a court may enter a default judgment without a hearing only if the amount claimed is a liquidated sum or one capable of mathematical calculation." Hunt v. Inter-Globe Energy, Inc., 770 F.2d 145, 148 (10th Cir. 1985).  In such

cases where a hearing is necessary, "the calculation of damages requires the Court to look beyond the averments of the complaint.  The Court is required to examine the sufficiency of all evidence with respect to damages, and, when evidence is deemed insufficient, to ascertain the appropriate level of damages through its own inquiry."  Joe Hand Promotions, Inc. v. Hernandez, No. 03 Civ. 6132(HB) et al., 2004 WL 1488110, at *2 (S.D.N.Y. June 30, 2004) (citations omitted).  The amount of damages assessed through such an inquiry "rests in the sound discretion of the Court."  DIRECTV, Inc. v. Albright, No. Civ. A. 03-4303, 2003 WL 22956416, at *3 (E.D. Pa. Dec. 9, 2003) (citing Cable/Home Communication Corp. v. Network Prods., Inc., 902 F.2d 829, 852 (11th Cir. 1990)).

While in this context "[d]ecisions to enter judgment by default are committed to the district court's sound discretion, . . . a decision based on an erroneous view of the law is an abuse of discretion." Dennis Garberg & Assocs., Inc., 115 F.3d at 771.  Thus, it is erroneous to enter a default judgment if, as a matter of law, Plaintiff's *Complaint* fails to state a claim upon which relief may be granted.

> '[A] defendant's default does not in itself warrant the court entering a default
> judgment.  There must be a sufficient basis in the pleadings for the judgment
> entered . . . .  The defendant is not held to admit facts that are not well-pleaded
> or to admit conclusions of law. . . .  In short, . . . a default is not treated as an
> absolute confession of the defendant of his liability and of the plaintiff's right
> to recover.'

DirecTV, Inc. v. Huynh, 318 F. Supp. 2d 1122, 1127 (M.D. Ala. 2004) (quoting Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)).  Further, a default judgment may not award relief that is greater in kind or amount than that sought in

the *Complaint*.  See Fed. R. Civ. P. 54(c); Scala v. Moore McCormack Lines, Inc., 985 F.2d 680, 683 (2d Cir. 1993).

Under the authorities cited above, any award of damages based on Defendant Guzman's default must be preceded by a determination of whether Plaintiff's pleading states a claim upon which relief may be granted.  If Plaintiff surmounts this preliminary hurdle, the Court must further determine whether the law confers discretion to determine the amount of damages, and if so, what factors are relevant to the Court's exercise of such discretion.

In this case, Plaintiff claims arise under four statutory provisions, namely Section 605(a) and 605(e)(4) of the Cable Communications Policy Act (CCPA), 47 U.S.C. §§ 605(a), 605(e)(4), and Sections 2511 and 2512 of the Electronic Communications Privacy Act, also known as the Wiretap Act, 18 U.S.C. §§ 2511, 2512.[1]  Accordingly, the Court first determines whether Plaintiff states a claim and is entitled to relief under the CCPA, and then the Court turns to the Plaintiff's claims under the Wiretap Act.

## 1.    The Cable Communications Policy Act (CCPA)

Plaintiff's motion asserts that it is entitled to $10,000 in damages for Defendant Guzman's violations of the CCPA.  In support of this assertion, Plaintiff cites two provision of the CCPA.  First, Plaintiff's *Complaint* alleges that Defendant Guzman is in violation of Section 605(a) of the CCPA, which essentially prohibits unauthorized persons from receiving satellite transmissions of the type offered by Plaintiff, or assisting another person in doing

---

[1]Unlike some other Defendants, Plaintiff's *Complaint* against Defendant Guzman does not contains a state-law claim for conversion.

so.  See 47 U.S.C. § 605(a); Huynh, 318 F. Supp. 2d at 1128.  Second, Plaintiff's *Complaint* alleges that Defendant Guzman is in violation of Section 605(e)(4) of the CCPA, which essentially prohibits unauthorized persons from manufacturing, assembling, modifying, importing, exporting, selling, or distributing a device if they have reason to know that the device is primarily intended for the type of activity prohibited by Section 605(a), *i.e.*, unauthorized reception of Plaintiff's satellite transmissions.  See 47 U.S.C. § 605(e)(4); DIRECTV, Inc. v. Getchel, No. 3:03 CV 2073(GLG), 2004 WL 1202717, at *3 (D. Conn. May 26, 2004).  Devices intended for this type of activity are commonly known as "pirate access devices" or "descramblers."

Other courts have held that in order to establish a violation of Section 605(a), "a plaintiff must prove that the defendant received or assisted another in receiving an interstate communication."  Huynh, 318 F. Supp. 2d at 1131.  "[P]ossession of a pirate access device standing alone does not amount to a violation."  Id.  However, a violation of Section 605(a) may be proven by circumstantial evidence, and possession of a pirate access device may serve as circumstantial evidence that the owner or recipient of the device is receiving the type of satellite transmissions prohibited by this statutory provision.  See DIRECTV, Inc. v. Gemmell, 317 F. Supp. 2d 686, 693 (W.D. La. 2004).

In contrast, Section 605(e)(4) pertains to the pirate access devices themselves, but the requirements for proving a violation of this provision are more strict because it "targets upstream manufacturers and distributors, not the ultimate consumer of pirating devices." Albright, 2003 WL 22956416, at *2; accord Getchel, 2004 WL 1202717, at *3; DIRECTV,

-8-

Inc. v.Hussain, No. Civ. A.03-6482, 2004 WL 1125937, at *1 (E.D. Pa. May 20, 2004);

Hernandez, 2004 WL 1488110, at *3.  The Second Circuit has distinguished Section 605(a)

from Section 605(e)(4) by concluding that a violation of Section 605(a) "occurs each time

a device is *purchased and installed*," whereas Section 605(e)(4) is "the provision relating to

manufacturers and sellers, *rather than users*, of cable descramblers."  Community Television

Systems, Inc. v. Caruso, 284 F.3d 430, 435-436 & n.6 (2d Cir. 2002) (emphasis added).

      The Court finds these authorities persuasive and concludes that in order to state a

claim under which statutory damages can be awarded for violation of Section 605(e)(4),

Plaintiff cannot rely solely on the fact or inference that a Defendant purchased or installed

a single pirate access device to receive satellite television transmissions on his or her

personal television system without proper authorization.  In other words, the Court concludes

that the mere act of installing or operating a single pirate access device on one's personal

television system may serve as circumstantial evidence of a violation of Section 605(a), but

it does not fall within the definition of "manufacturing," "modifying," or "assembling" a

device under Section 605(e)(4).  Similarly, the simple fact of receiving a single pirate access

device through the mail may provide circumstantial evidence to support a violation of

Section 605(a), but it does not amount to "distributing," "exporting," or "importing" a device

under Section 605(e)(4).  See DIRECTV, Inc. v. Brasswell, No. 4:03-CV-330-A, 2004 WL

1562964, at *2 n.3 (N.D. Tex. July 12, 2004).

      The procedure for calculating damages to a party aggrieved by violations of Sections

605(a) or 605(e)(4) is provided in Section 605(e)(3)(C) of the CCPA.  See 47 U.S.C. §

605(e)(3)(c).  Under this procedure, the aggrieved party may elect to receive either actual damages and any profits of the violator, or an award of statutory damages. With respect to statutory damages, Section 605(e)(3)(C)(i)(II) of the CCPA provides that:

> the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.

47 U.S.C. § 605(e)(3)(C)(i)(II).  Courts have interpreted this language as granting discretion to the district court to decide what amount to award based on the particular circumstances of each case.  See, e.g., DirecTV, Inc. v. Kaas, 294 F. Supp. 2d 1044, 1047-48 (N.D. Iowa 2003) (citing KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 17-21 (1st Cir. 2003)); DIRECTV, Inc. v. Griffin, 290 F. Supp. 2d 1340, 1344 (M.D. Fla. 2003); Smith, 141 F. Supp. 2d at 286; Getchel, 2004 WL 1202717, at *2; Huynh, 318 F. Supp. 2d at 1130; Albright, 2003 WL 22956416, at *3.

Factors to be considered in determining the appropriate amount of damages for a violation of Section 605(a) of the CCPA include:

> (1) whether the defendant profited as a result of his violation; (2) whether the defendant assisted or induced others in violating the statute; (3) whether the defendant's violation was willful or flagrant; (4) whether the damage award will be sufficient to deter similar conduct;  and (5) whether the damage award is comparable to awards in similar cases.  The burden is on DIRECTV to provide justification for why damages in excess of the minimum should be awarded.

Huynh, 318 F. Supp. 2d at 1131-32 (citations omitted); see also Getchel, 2004 WL 1202717, at *2 (collecting cases).

In considering these factors, the Court notes that a person who violates Sections 605(a) or 605(e)(4) of the CCPA may also face substantial criminal penalties. See 47 U.S.C. § 605(e)(1), (2), (4). Therefore, such a person may exercise his or her Fifth Amendment privilege and choose to stand silent rather than offering an explanation for his or her conduct. While the conduct itself remains unlawful and may be deemed admitted by virtue of the failure to answer the well-pleaded allegations in Plaintiff's *Complaint*, the Court will not go beyond the allegations of the *Complaint* and draw inferences adverse to a Defendant based solely on the fact that he or she has exercised his or her Fifth Amendment privilege. See Albright, 2003 WL 22956416, at *3 n.2. In particular, the Court will not infer from Defendant Guzman's silence that his violation of the above statutes was willful.

In this case, Plaintiff's *Complaint* alleges that: "on or about December 3, 2002, Defendant Guzman purchased one (1) "SAT-HU Sureshot" from Easybuy 2000. This order was shipped to Defendant Guzman at Defendant's address in Los Lunas, New Mexico." [Compl. ¶ 21.] At the hearing on August 18, 2004, Plaintiff DIRECTV also presented copies of Defendant Guzman's DIRECTV billing records, printouts of webpages from "Easybuy2000.com," and shipping information regarding the unlooper purchase.

Unlike the allegations and evidence regarding some other Defendants, the specific allegations and evidence pertaining to Defendant Guzman do not show that he purchased multiple devices on multiple occasions, that there is actual evidence that he used the device

to receive any of Plaintiff's satellite transmissions, or that he ended his subscription with Plaintiff shortly after ordering or receiving the device from "Easybuy2000.com."

As noted above, a defendant in default "'is not held to admit facts that are not well-pleaded or to admit conclusions of law.'" Huynh, 318 F. Supp. 2d at 1127 (quoting Nishimatsu Constr. Co., Ltd., 515 F.2d at 1206). Further, courts generally do not accept conclusions drawn by piling inference upon inference. See NLRB v. Meinholdt Mfg., Inc., 451 F.2d 737, 738 (10th Cir. 1971). Thus, while Defendant Guzman's purchase of a single "unlooper," in combination with the other evidence presented at the hearing, supports a reasonable inference that he committed a violation of 605(a), the Court cannot reasonably infer from this evidence that Defendant Guzman was the type of "upstream manufacturer or distributor" who could be found liable for a violation of Section 605(e)(4) of the CCPA. As noted above, the allegations in the *Complaint* to the effect that this Defendant manipulated certain equipment so as to install it or render it operational with respect to receiving Plaintiff's satellite transmissions on a single personal television system are not legally sufficient to support the conclusion that Defendant Guzman violated Section 605(e)(4).

Plaintiff has presented no other particularized evidence which could reasonably support such a conclusion of law. For these reasons, the Court declines to award damages for a violation of Section 605(e)(4) of the CCPA in this case.

The Court will, however, award damages for Defendant Guzman's violation of Section 605(a) of the CCPA based on the reasonable inference that this Defendant used a single pirate access device to receive significantly more DIRECTV programming than is

-12-

reflected in the billing records presented at the hearing.  In particular, Plaintiff presented evidence that Defendant Guzman purchased a pirate access device on or about December 3, 2002, and that the device he purchased remained operational as a pirate access device up until a few days after Plaintiffs' *Complaint* was filed on March 29, 2004.  As stated above in the Court's findings of fact, it is reasonable to infer that Defendant Guzman received or intercepted approximately $149.00 per month of DIRECTV programming that was not paid for as part of this Defendant's DIRECTV subscription.  Multiplying this monthly cost times the number of months Defendant Guzman was in possession of a pirate access device capable of providing access to all of Plaintiff's satellite television transmissions free of charge, the Court finds that an award of $2,384.00 in damages for the violation of Section 605(a) is appropriate.  The Court notes that this amount is consistent with the amount awarded in other cases where a single pirate access device was purchased and there was sufficient evidence to reasonably estimate the period during which the device was used and the approximate value of the satellite transmissions at issue.  See, e.g., Smith, 141 F. Supp. 2d at 286-87; Getchel, 2004 WL 1202717, at *3.  Combined with the award of attorney fees and costs, the Court determines that an award of $2,384.00 in damages is sufficient to deter future violations by Defendant Guzman.

## 2.     The Electronic Communications Privacy Act (Wiretap Act)

Plaintiff's *Complaint* alleges that Defendant Guzman also violated two provisions of the Wiretap Act, namely 18 U.S.C. §§ 2511 and 2512.  The Court concludes, however, that Plaintiff lacks a private right of action to redress violations of Section 2512 and that Plaintiff

is not entitled to any additional damages for Defendant Guzman's violation of Section 2511 in this case.

Section 2512 of the Wiretap Act imposes criminal penalties for the manufacture, distribution, possession, sale, or marketing of a wire, oral, or electronic communication intercepting device with knowledge or reason to know that the device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications. See 18 U.S.C. § 2512; Gemmell, 317 F. Supp. 2d at 688-89.  While these activities are prohibited by the Wiretap Act, the statute does not expressly provide a private cause of action to redress the possession or distribution of a device prohibited by Section 2512, and the majority of courts that have addressed the issue hold that such a private right of action does not exist either expressly or by implication. See generally Gemmell, 317 F. Supp. 2d at 691 & n.2 (collecting cases); see, e.g., DIRECTV, Inc. v. Treworgy, 373 F.3d 1124, 1129 (11th Cir. 2004); Huynh, 318 F. Supp. 2d at 1129; DIRECTV, Inc. v. Baker, 318 F. Supp. 2d 1113, 1116-21 (M.D. Ala. 2004); DIRECTV, Inc. v. Hoverson, 319 F. Supp. 2d 735, 736-38 (N.D. Tex. 2004).

The Court finds the authorities cited above to be persuasive.  Accordingly, the Court concludes that there is no private right of action of which Plaintiff may avail itself to obtain damages for a violation of Section 2512 of the Wiretap Act in this case.  It follows that Plaintiff's *Complaint* does not state a claim for violation of Section 2512  upon which relief may be granted, and therefore Section 2512 provides no basis to support an award of damages in this case.

The Court reaches a different conclusion with regard to the allegation that Defendant Guzman violated Section 2511 of the Wiretap Act.  Section 2511 provides, in relevant part, that "any person who intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication" shall be punished by fine or imprisonment or subject to suit by the Federal Government.  18 U.S.C. § 2511; see DirecTV, Inc. v. Brown, 371 F.3d 814, 816-17 (11th Cir. 2004).  In addition, Section 2520(a) of the Wiretap Act expressly creates a private cause of action for "any person whose wire, oral, or electronic communication is intercepted" in violation of Section 2511(1)(a) of that statute.  Huynh, 318 F. Supp. 2d at 1129 (quoting 18 U.S.C. § 2520(a)); accord Heggy v. Heggy, 944 F.2d 1537, 1539-40 (10th Cir. 1991).  Accordingly, Plaintiff's *Complaint* states a viable claim that Defendant Guzman violated Section 2511(1)(a).

It does not necessarily follow that Plaintiff is entitled to an additional award of damages based on a violation of Section 2511(1)(a), however, because Section 2520 of the Wiretap Act confers discretion upon the Court to decide whether an award of damages is warranted in the context of a private civil action.  See DirecTV, Inc. v. Brown, 371 F.3d 814, 817-19 (11th Cir. 2004) (agreeing with the  Fourth, Sixth, and Eighth Circuits that the decision to award damages under 18 U.S.C. § 2520(c)(2) is discretionary and concluding that a district court did not abuse its discretion in declining to award any damages under that statute); Kaas, 294 F. Supp. 2d at 1048-49 (concluding that "the present case is not one for a 'sum certain' and that, in the exercise of the court's discretion, the plaintiff is entitled to

-15-

no damages under 18 U.S.C. § 2520(c)(2)); Griffin, 290 F. Supp. 2d at 1346 n.25 (collecting cases and adopting the majority view).

Factors relevant to the Court's exercise of discretion in awarding damages under this statute include:

> (1) whether the defendant profited by his violation; (2) whether there was any evidence that the defendant actually used his pirate access devices; (3) the extent of DIRECTV's financial harm; (4) the extent of the defendant's violation; (5) whether the defendant had a legitimate reason for his actions; (6) whether an award of damages would serve a legitimate purpose; and (7) whether the defendant was also subject to another judgment based on the same conduct.

Huynh, 318 F. Supp. 2d at 1132 (citations omitted); see also Griffin, 290 F. Supp. 2d at 1348-49 (similar).

In cases such as this one where there is no specific evidence that the Defendant profited commercially from the interception of Plaintiff's satellite transmissions, and where Plaintiff is fully compensated by an award of damages plus attorney fees and costs under Section 605 of the CCPA, the award of additional damages under the Wiretap Act for the same conduct "could easily be viewed as gratuitous" and could "'bring financial ruin to persons of modest means, even in cases of trivial transgressions.'" Brown, 371 F.3d at 818-19 (quoting Reynolds v. Spears, 93 F.3d 428, 436 (8th Cir. 1996)).  For these reasons, many courts have declined to award any damages for violations of Section 2511(1)(a) of the Wiretap Act under these circumstances where such an award would essentially duplicate the relief already awarded under Section 605 of the CCPA.  See, e.g., Huynh, 318 F. Supp. 2d at 1132; Kaas, 294 F. Supp. 2d at 1049; Getchel, 2004 WL 1202717, at *1 n.1; DIRECTV,

Inc. v. Perrier, No. 03-CV-4005, 2004 WL 941641, at *4 (W.D.N.Y. Mar. 15, 2004).  The

Court finds these authorities to be persuasive and declines to award additional damages for

Defendant Guzman's violation of Section 2511 in this case.

### C.   **Attorney Fees and Costs**

Plaintiff's motion requests attorney fees in the sum of $310.86 and costs in the sum

of $150.00.  [Doc. No. 4.]  Section 605(e)(3)(B)(iii) of the CCPA provides that the Court

"shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an

aggrieved part who prevails."  47 U.S.C. § 605(e)(3)(B)(iii).  Similarly, Section 2520(b)(3)

of the Wiretap Act provides for "a reasonable attorney's fee and other litigation costs

reasonably incurred."  18 U.S.C. § 2520(b)(3).

The Court finds that Plaintiff is the prevailing party in this action against Defendant

Guzman.  Therefore, Plaintiff is entitled to an award of reasonable attorney fees and costs

under the above statutes.

The determination of what amount is "reasonable," however, is committed to this

Court's discretion.  See Huynh, 318 F. Supp. 2d at 1130; cf. Hunt, 770 F.2d at 148 (noting

that "attorney's fees may not be awarded without a hearing to determine the amount").  Thus,

a court may deny a request for attorney fees that is unsupported by any evidence or

documentation to show that the fees are reasonable.  See, e.g., Getchel, 2004 WL 1202717,

at *4; cf. Sussman v. Patterson, 108 F.3d 1206, 1212 (10th Cir. 1997) (noting that in order

to satisfy its burden of proving the reasonableness of its attorney fees, a prevailing party

generally must present detailed billing records that explain how the hours worked were

-17-

allotted to specific tasks).  In this case, Plaintiff has presented the affidavit of one of its attorneys, James R. Standring, to support its request for attorney fees and costs.

The Court notes that this case presented no particularly complicated legal issues with respect to Defendant Guzman, and the Court takes notice that Plaintiff's attorneys are handling a number of cases presenting identical issues in this district and throughout the country.  See Huynh, 318 F. Supp. 2d at 1130 (reducing attorney fees where issues are straightforward and Plaintiff's attorneys enjoy some economy of scale due to the large number of similar cases).  Indeed, the Court consolidated the hearing on Plaintiff's motion for default judgment against Defendant Guzman with other cases with similar motions pending, thereby allowing Plaintiff's counsel to address such motions at a single hearing involving essentially the same issues.[2]

The large number of reported decisions by other courts in similar cases brought by Plaintiff also provides a basis for comparison that simplifies this Court's task of determining the reasonableness of the attorney fees and costs requested in Plaintiff's motion.  See Huynh, 318 F. Supp. 2d at 1130 (assessing the reasonableness of requested attorney fees by reference to the fees awarded in similar cases brought by the same plaintiff).  Upon inquiry at the hearing on August 18, 2004, Plaintiff's counsel provided more specific information about how the requested attorney fees and costs were calculated and divided among the numerous cases that Plaintiff is simultaneously prosecuting.  With this additional information, the Court

_____

[2]Plaintiff's counsel stated that he is not requesting any additional attorney fees or costs related to his appearance or presentation of evidence at the hearing on August 18, 2004.

-18-

is able to conclude that Plaintiff's request for attorney fees in the sum of $310.86 and costs in the sum of $150.00 is reasonable.  The Court will award these amounts.

### D.    Injunctive Relief

Plaintiff's motion also requests that the Court permanently enjoin Defendant Guzman from committing or assisting in the commission of any violation of 47 U.S.C. § 605, 18 U.S.C. § 2511, and 18 U.S.C. § 2512.  As stated earlier, there is no private right of action to enforce 18 U.S.C. § 2512, but injunctive relief to enforce 47 U.S.C. § 605 and 18 U.S.C. § 2511 in the context of a private civil action is expressly authorized by the CCPA and the Wiretap Act.  See Charter Communications Entm't I, LLC v. Shaw, 163 F. Supp. 2d 121, 126 (D. Conn. 2001); Smith, 141 F. Supp. 2d at 287-88; Getchel, 2004 WL 1202717, at *4. The Court finds that Plaintiff is entitled to a permanent injunction enjoining and restraining Defendant Guzman from receiving, possessing, or using a pirate access device in violation of the above statutes.  See Getchel, 2004 WL 1202717, at *4; Kaas, 294 F. Supp. 2d at 1047.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff is entitled to a default judgment granting injunctive relief and awarding statutory damages in the amount of $2,384.00, attorney fees in the amount of $310.86, and costs in the amount of $150.00.

**IT IS, THEREFORE, ORDERED** that *Plaintiff's Motion for Entry of Default and Default Judgment Against Eliezer Guzman* [Doc. No. 105] is **GRANTED IN PART** and **DENIED IN PART** as specified above.

**IT IS FURTHER ORDERED** that default judgment shall be entered against Defendant Eliezer Guzman in the sum of $2,384.00, with costs and disbursements in the amount of $150.00, and attorneys' fees in the sum of $310.86, amounting in all to the sum of $2,844.86, plus post-judgment interest as allowed by law to accrue thereon from the date of judgment forward until paid.

**IT IS FURTHER ORDERED** that Defendant Eliezer Guzman is permanently enjoined from committing or assisting in the commission of any violation of 47 U.S.C. § 605 or 18 U.S.C. § 2511.

**SO ORDERED**, this 31st day of August, 2004, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
*United States District Judge*